*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re MUNIR HUSSAIN, et al.,<br>　　　　　　Debtors. | |
| MUNIR HUSSAIN,<br>　　　　　　Plaintiff,<br>　　v.<br>EDWARD J. KLOSS; and<br>KLOS COMPANY, LLC<br>d/b/a CRIB & TEEN CITY,<br>　　　　　　Defendants. | Civ. Action Nos. 19-09388; 19-09489<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Before the Court is an appeal brought by appellants Edward J. Kloss ("Kloss") and Kloss Company, LLC d/b/a Crib & Teen City ("Crib & Teen") (collectively, "the Kloss Parties") from two separate orders ("Orders") entered by the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court"). The Orders disposed of an adversary proceeding commenced in the Bankruptcy Court by appellee Munir Hussain ("Hussain"). In one order, entered on April 3, 2019, the Bankruptcy Court denied a motion brought by the Kloss Parties seeking an extension of the time for discovery ("Discovery Extension Motion"). In the other order, entered on April 4, 2019, the Bankruptcy Court granted a motion brought by Hussain for summary judgment in his favor and against the Kloss Parties ("Summary Judgment Motion"). For the reasons set forth below, both Orders are **AFFIRMED**.

1

**I.     BACKGROUND**

Given the parties' familiarity with the facts in the record and the procedural history of this case, the Court summarizes the background here only to the extent it is pertinent to the Court's decision. Hussain was the principal shareholder, director, and chief executive officer of nonparty Munire Furniture Company, Inc. ("MFC"), a wholesaler of baby and children's furniture. Kloss owns Crib & Teen, which bought furniture from MFC. Hussain and Kloss enjoyed a close personal and business relationship for many years prior to the events leading to the present lawsuit. At their direction, the Kloss Parties and MFC entered into numerous lending arrangements.

In 2008, the Kloss Parties provided MFC with a $1.5 million unsecured loan ("2008 Loan"). Subsequently, on July 1, 2008, MFC obtained a $13.5 million secured financing facility from Sovereign Bank. At Sovereign Bank's request, Kloss executed a subordination agreement on January 12, 2010 (the "2010 Subordination"), which was made retroactive to July 1, 2008. In 2011, MFC arranged new financing with Bank Leumi, which substituted for Sovereign Bank as MFC's primary lender. As a condition of its loan to MFC, Bank Leumi also required a subordination agreement ("2011 Subordination"), which Kloss executed on March 9, 2011. Under the 2011 Subordination, Kloss agreed to forbear from receiving repayment of any kind on the 2008 Loan before MFC satisfied all obligations to Bank Leumi.[1] The 2011 Subordination also made clear that Appellant was subordinating the 2008 Loan not just to the current Bank Leumi financing facility, but also to all obligations of MFC to Bank Leumi "hereafter incurred." In 2013, MFC

---

[1] The specific provision in the 2011 Subordination provides, in relevant part: "All claims and demands, and all interest heretofore or hereafter accrued thereon, which the Creditor now has or may hereafter have or acquire against the Debtor . . . shall not be paid, and no payment on account thereof, nor any security interest therein, shall be created, received, accepted or retained nor shall any financing statement be filed with respect thereto by the Creditor unless and until the Debtor has paid and satisfied in full all of its obligations to the Bank . . . ." (Subordination Agreement at § 1, R.389-393.)

increased the amount of its secured credit facility with Bank Leumi to $17 million. In connection with that transaction, Bank Leumi requested that Kloss ratify and reaffirm the 2011 Subordination ("2013 Reaffirmation), which Kloss executed on November 15, 2013. In exchange for executing the 2013 Reaffirmation, the Kloss Parties requested, and MFC agreed, to increase the interest rate on the 2008 Loan.

In September 2014, it came to light that MFC's chief financial officer, Norman D'Souza ("D'Souza"), had created fraudulent books and records for MFC. On April 1, 2016, D'Souza pled guilty to conspiracy to commit bank fraud and wire fraud and, later that year, was sentenced to two years in prison. In his allocution to the offenses, D'Souza admitted that he included falsified numbers in the borrowing base certificates that MFC provided to Bank Leumi between the years 2012 through 2014. On September 18, 2014, Bank Leumi filed a complaint in federal district court against, *inter alia*, MFC and Hussain, alleging fraud in connection with MFC's borrowing base certificates that occurred from and after December 2013.

On September 19, 2014, MFC filed for bankruptcy and, later that year, MFC ceased its operations and liquidated its assets. The proceeds from the liquidation were less than the amount of secured debt owed to Bank Leumi. Hussain, along with his wife, also filed a Chapter 7 bankruptcy petition and later received a discharge of his debts pursuant to 11 U.S.C. § 727. The Kloss Parties were not listed as creditors on Hussain's bankruptcy petition and maintain that they did not learn of the filing in time to file a claim or object to the discharge. Without knowledge of Hussain's bankruptcy, the Kloss Parties filed a complaint in state court in February 2017 ("State Court Action"), naming Hussain, Bank Leumi, D'Souza and his wife, and certain former accounting and legal professionals of MFC as defendants. In the pending State Court Action, the

3

Kloss Parties are attempting to recover monies loaned to MFC through various causes of action including negligence, fraud, malpractice, and unjust enrichment.

On April 7, 2017, Hussain commenced an adversary proceeding ("Adversary Proceeding") against the Kloss Parties in bankruptcy court, seeking to enjoin the State Court Action and a declaration that the Kloss Parties' claims against Hussain in the State Court Action are barred by the discharge he had obtained in his Chapter 7 bankruptcy case. Early on in the Adversary Proceeding, the parties entered into a consent order staying the State Court Action as to Hussain only. The State Court Action continued as to all other defendants. The Kloss Parties included a counterclaim in their answer in the Adversary Proceeding, alleging, *inter alia*, that the Kloss Parties' claims in the State Court Action should be excepted from the bankruptcy discharge pursuant to Sections 523(a)(2), (4), and (6) of the Bankruptcy Code.

After motion practice in the Adversary Proceeding, on August 15, 2017, Hussain and the Kloss Parties agreed to a Joint Scheduling Order. The Joint Scheduling Order provided that requests for production of documents and deposition notices be served no later than September 15, 2017, and that discovery, including motions to compel, be completed before December 31, 2017. The parties subsequently engaged in mediation, which stayed all discovery in the Adversary Proceeding. On February 15, 2018, the parties agreed to a new Joint Scheduling Order. The new Joint Scheduling Order set forth that all fact discovery was to be completed by July 1, 2018 and that any motions to compel discovery were to be made so that the Bankruptcy Court could rule, and discovery could be obtained, by that date. It further provided that all other motions were to be filed no later than 30 days after the completion of discovery.

On July 2, 2018 (July 1 being a Sunday), the Kloss Parties filed a motion to extend the discovery end date in the Adversary Proceeding—*i.e.*, the Discovery Extension Motion. The basis

for the request was that the Kloss Parties had refrained from noticing Hussain's deposition because paper discovery in the State Court Action was moving more slowly than anticipated, and that they did not wish to depose Hussain until all paper discovery was complete in the State Court Action. Because the fraud allegations involved in the Adversary Proceeding were so closely related to the fraud issues in the State Court Action, the Kloss Parties claimed that there was an understanding that the discovery in the two cases would be coordinated to prevent duplication and save resources.

In response to the Discovery Extension Motion, Hussain countered that the Kloss Parties were not diligent in pursuing discovery in the Adversary Proceeding; that there was no agreement coordinating discovery in the State Court Action with discovery in the Adversary Proceeding; and that any extension of time for discovery would be futile because Kloss's own deposition testimony indicates that the Kloss Parties cannot identify, produce, or show reliance on any allegedly fraudulent document or statement. Hussain indicated in his opposition that he would file a motion for summary judgment that could be decided without the need for additional discovery.

The Bankruptcy Court adjourned the Discovery Extension Motion to allow it to be considered with Hussain's anticipated motion for summary judgment. Shortly thereafter, on September 4, 2018, Hussain filed the Summary Judgment Motion, in which he argued that the Kloss Parties could not prove the allegations in their counterclaim. In opposing the Summary Judgment Motion, the Kloss Parties asked the Bankruptcy Court to deem their pending Discovery Extension Motion as a motion to allow additional time to take discovery under Rule 56(d) of the Federal Rules of Civil Procedure. On October 2, 2018, the Bankruptcy Court held oral argument on the Summary Judgment Motion. After full briefing by the parties, the Bankruptcy Court entered the separate Orders granting the Summary Judgment Motion and denying the Discovery Extension Motion. The Bankruptcy Court set forth its reasoning in a letter decision dated April 3, 2019

5

("Letter Decision"). On April 8, 2019, the Kloss Parties filed notices of appeal from the Orders of the Bankruptcy Court, and the instant appeal ensued.

## II. JURISDICTION AND STANDARDS OF REVIEW

This Court has jurisdiction to review final orders of the bankruptcy courts pursuant to 28 U.S.C. § 158(a)(1). The order of the Bankruptcy Court denying the Kloss Parties' Discovery Extension Motion is reviewed for an abuse of discretion. *Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 148 (3d Cir. 2013). "To demonstrate an abuse of discretion, [an appellant] must show that the District Court's decision was arbitrary, fanciful or clearly unreasonable." *Id.* (quoting *Moyer v. United Dominion Indus., Inc.*, 473 F.3d 532, 542 (3d Cir. 2007)); *see also Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015) ("A court abuses its discretion if [its] decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.") (citation and internal quotation marks omitted).

The other order of the Bankruptcy Court under review, granting Hussain's Summary Judgment Motion, is subject to a *de novo* standard of review. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999) (stating that "[b]ecause . . . review of the grant of summary judgment" is "a purely legal determination, we apply a *de novo* standard of review"). Summary judgment is appropriate if the moving party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. P. 7056). A genuine dispute exists "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "a party will not be able to withstand a motion for summary judgment merely by making allegations." *In re Ikon Office Sols., Inc.*, 277 F.3d 658, 666 (3d Cir. 2002). Instead, the nonmoving party must "designate specific

6

facts" in the record evidence to "show[ ] that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255. "[A]n inference based upon a speculation or conjecture does not," however, "create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) (citation omitted).

## III. DISCUSSION

In this appeal, I must first consider the issue of whether the Bankruptcy Court abused its discretion by denying the Discovery Extension Motion, because a reversal of that decision would render moot the issue of whether summary judgment was properly granted. For the reasons set forth below, I find that the Bankruptcy Court did not abuse its discretion by denying the Kloss Parties an opportunity to take additional discovery before proceeding to summary judgment. Therefore, I also must consider whether, based on the evidence that was part of the record at the time of the Summary Judgment Motion, the Bankruptcy Court properly granted summary judgment in favor of Hussain and against the Kloss Parties. Having examined the evidence in the summary judgment record, I agree with the Bankruptcy Court's conclusion that Hussain is entitled to summary judgment as a matter of law and, therefore, affirm both Orders of the Bankruptcy Court.

### A. The Bankruptcy Court Did Not Abuse Its Discretion by Denying the Discovery Extension Motion.

A district court may grant summary judgment before discovery is completed so long as the party opposing summary judgment has had "an adequate opportunity to obtain discovery." *Dowling v. City of Phila.*, 855 F.2d 136, 138-39 (3d Cir. 1988); *see also Celotex Corp.*, 477 U.S.

7

at 322.  If a party opposing summary judgment "believes that s/he needs additional time for discovery, Rule [56(d)] specifies the procedure to be followed." *Pa. Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir.2012) (quoting *Dowling*, 855 F.2d at 139, which addressed the predecessor to Rule 56(d), Rule 56(f)).  Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

The Third Circuit has interpreted Rule 56(d) as requiring "a party seeking further discovery in response to a summary judgment motion [to] submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling*, 855 F.2d at 139-40.  Except "in all but the most exceptional cases, failure to comply with [Rule 56(d)] is fatal to a claim of insufficient discovery on appeal." *Bradley v. United States*, 299 F.3d 197, 207 (3d Cir. 2002); *see also Dowling*, 855 F.2d at 139 (noting that "[m]ost courts which have considered the issue agree that filing an affidavit is necessary for the preservation of a Rule [56(d)] contention that summary judgment should be delayed pending further discovery") (citations omitted).

In this case, the Bankruptcy Court concluded that the Kloss Parties had "not met their burden of proving that additional discovery would make a difference," and, instead, ruled on the Summary Judgment Motion without allowing additional time for the Kloss Parties to discover additional evidence.  (Letter Decision at 18-20.)  While it may have been more prudent under the circumstances for the Bankruptcy Court to have deferred consideration of the Summary Judgment Motion, I cannot find an abuse of discretion in the Bankruptcy Court's decision to deny additional

discovery before proceeding to summary judgment. Although the Kloss Parties filed a certification in support of the Discovery Extension Motion (*see* Certification of Richard B. Honig in Support of Motion to Extend Discovery, R.306-316.), they did not file any Rule 56(d) affidavit with their response to the Summary Judgment Motion. Thus, as a procedural matter alone, the Kloss Parties failed to comply with the rule. However, even if the Court were to construe the certification that was filed in connection with the Discovery Extension Motion as a Rule 56(d) affidavit, the Kloss Parties failed to indicate in that certification either (1) "what particular information is sought" by taking further discovery or (2) "how, if uncovered," that information "would preclude summary judgment," both of which were required. *Dowling*, 855 F.2d at 139-40. Instead, in the certification, the Kloss Parties only addressed the reasons for why they were unable to complete discovery before the discovery end date that was set forth in the Bankruptcy Court's Joint Scheduling Order. This did not meet the requirements of Rule 56(d). *See Williams v. Gavin*, 640 F. App'x 152, 158 (3d Cir. 2016) (no abuse of discretion in denying Rule 56(d) continuance where requesting party "wholly failed to specify, either in the [d]istrict [c]ourt or on appeal, what evidence he hoped to obtain through further discovery that would create a genuine issue of material fact with respect to any of his claims.")[2] Accordingly, I conclude that the Bankruptcy Court did not abuse its discretion by ruling on the Summary Judgment Motion without first allowing additional time for discovery.

---

[2] In their briefing filed in this appeal, the Kloss Parties specify several categories of information that the Kloss Parties believe they could have obtained with further discovery. The Kloss Parties do not indicate in their briefing whether they included those details in their submissions to the Bankruptcy Court. The Bankruptcy Court cannot be found to have abused its discretion for failing to consider arguments that were never presented to that court.

B.  **The Bankruptcy Court Properly Entered Summary Judgment In Favor of Hussain and Against the Kloss Parties.**

Because I find that the Bankruptcy Court did not abuse its discretion in denying the Discovery Extension Motion, I now turn to the issue of whether, based on the evidence that was part of the record at the time of the Summary Judgment Motion, the Bankruptcy Court properly granted summary judgment in favor of Hussain and against the Kloss Parties.

The Bankruptcy Code (*i.e.* Title 11 of the United States Code) is designed "to relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start." *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir.1995). In furtherance of that goal, Section 727 of the Bankruptcy Code provides for the discharge of a debtor in a Chapter 7 case from "all debts that arose before the date of the [discharge] order." 11 U.S.C § 727(b). However, because the Bankruptcy Code "limits the opportunity for a completely encumbered new beginning to the honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991) (internal quotation marks omitted), the Bankruptcy Code excepts those debts from discharge that are incurred by means of fraud or false financial statements. Specifically, Section 523(a)(2)(B) provides, in pertinent part, that an individual debtor is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . use of a statement in writing . . . (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iv) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B). A creditor who seeks a declaration that a debt is nondischargeable under Section 523(a)(2)(B) must prove his case by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

In this case, the Kloss Parties claim that any personal liability by Hussain for the 2008 Unsecured Loan should be declared nondischargeable pursuant to Section 523(a)(2)(B),[3] because the 2008 Loan, and the subsequent subordinations and reaffirmation, were allegedly procured by Hussain on the basis of MFC's fraudulent financial statements. More specifically, the Kloss Parties allege that Hussain directed D'Souza to prepare fraudulent financial statements and used those statements to induce the Kloss Parties to make the 2008 Loan. The Kloss Parties further allege that Hussain kept the fraudulent statements in a binder (the "Binder"), which he showed to Kloss prior to making the 2008 Loan. The Kloss Parties allege that Hussain continued the fraud and used more fraudulent financial statements to convince the Kloss Parties to forbear from demanding repayment on the 2008 Loan and to execute the 2010 Subordination, the 2011 Subordination, and the 2013 Reaffirmation.

In granting summary judgment in favor of Hussain and against the Kloss Parties, the Bankruptcy Court concluded that the Kloss Parties had not presented sufficient evidence to establish all of the elements of Section 523(a)(2)(B). (*See* Letter Decision at 8-15.) Specifically, the Bankruptcy Court found that the Kloss Parties failed to identify specific documents that were false or fraudulent and failed to show that the Kloss Parties actually reviewed or relied on those

---

[3] The Kloss Parties also assert that Hussain's liability should be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), § 523(a)(4), and §523(a)(6). The Kloss Parties did not address § 523(a)(6) in their briefing filed in response to the summary judgment motion in the Bankruptcy Court, and this Court will not consider arguments raised for the first time on appeal. *See Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir. 1994). The Kloss Parties also do not address § 523(a)(4) in their briefing filed in this appeal, and, therefore, the Court deems any claim based on that exception to have been waived. As for § 523(a)(2)(A), that provision applies only where the debt is obtained by "false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition*." 11 U.S.C. § 523(a)(2)(A) (emphasis added). In this case, it is abundantly clear to the Court that the only fraud alleged in the Kloss Parties' counterclaim relates to the financial condition of MFC. Accordingly, the Court finds that § 523(a)(2)(A) cannot apply to the facts of this case. *Cf. Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1764 (2018) (rejecting a narrow interpretation of the term "respecting" in § 523(a)(2)(A) and stating that a "statement is 'respecting' a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status").

documents in connection with the 2008 Loan, the 2010 Subordination, or the 2011 Subordination. (*Id*. at 11-14.) In addition, although the Bankruptcy Court acknowledged that there was evidence in the record to show that the Kloss Parties relied on fraudulent documents when entering into the 2013 Reaffirmation, the Bankruptcy Court nevertheless concluded that the 2013 Reaffirmation was of "no effect," because the Kloss Parties had already "waived" their collection rights by virtue of the 2011 Subordination. (*Id*. at 15.) The Bankruptcy Court therefore concluded that any fraud related to the 2013 Reaffirmation could not support the Kloss Parties' claim to a discharge exception under Section 523(a)(2)(B). (*Id*.)

Having examined the summary judgment record and the Bankruptcy Court's decision, I find that the Bankruptcy Court properly entered summary judgment in favor of Hussain and against the Kloss Parties. *First*, I agree with the Bankruptcy Court's conclusion that the Kloss Parties failed to present sufficient evidence to establish the falsity of any financial statements that were presented to Kloss in connection with the 2008 Loan, 2010 Subordination, or 2011 Subordination. *Second*, I agree with the Bankruptcy Court's conclusion that the 2013 Reaffirmation merely confirmed rights that the Kloss Parties had already given up and, therefore, cannot support the Kloss Parties' claim to a discharge under Section 523(a)(2)(B). I provide my reasoning for these conclusions in greater detail below.

> 1. **The Kloss Parties Did Not Present Sufficient Evidence of Falsity With Respect to the 2008 Loan, the 2010 Subordination, or the 2011 Subordination.**

In order to prove their case under Section 523(a)(2)(B), the Kloss Parties must show by a preponderance of the evidence that the 2008 Unsecured Loan, or any of the subsequent subordinations or reaffirmation, were obtained by use of a written statement (i) that is materially false, (ii) respecting MFC's financial condition; (iii) on which the Kloss Parties relied, and (iv) that Hussain caused to be made or published with intent to deceive. 11 U.S.C. § 523(a)(2)(B).

The Bankruptcy Court concluded that the Kloss Parties failed to identify specific documents that were false (*i.e.*, the first element) and failed to show that the Kloss Parties actually relied on those documents (*i.e.*, the third element) in connection with the 2008 Loan, the 2010 Subordination, or the 2011 Subordination. (*See* Letter Decision at 11-14.) Having reviewed the summary judgment record, I agree with the Bankruptcy Court's conclusion that there is insufficient evidence to establish the falsity of any financial statements that Kloss may have relied upon when making the 2008 Loan, or when executing the 2010 Subordination or 2011 Subordination. I address the evidence that was presented for each of these transaction, in turn.

***The 2008 Loan.*** At his deposition, Kloss testified that he reviewed documents from the Binder prior to making the 2008 Loan, but he could not identify any specific documents that were presented to him. In his certification in opposition to the Summary Judgment Motion, Kloss reiterated that he reviewed the Binder, but he still did not identify a single specific document from the Binder. Instead, Kloss stated in his certification that the Binder "*generically* . . . contained copies of [MFC's] Financial Statements, Projections, Tax Returns, Photos and other documents . . . concerning [MFC's] financial condition." Hussain denied, in his certification in support of the Summary Judgment Motion, the existence of the Binder altogether.

The existence of the Binder is a matter of dispute. However, even assuming that Kloss relied upon the contents of the Binder in connection with the 2008 Loan, the Kloss Parties still have not satisfied their burden of presenting *any* evidence—much less by a *preponderance* of the evidence—to establish the falsity of any documents in the Binder. Without presenting (or, at the very least, identifying) the specific financial statements that were inside the Binder, the Kloss Parties' allegation that those documents were false or fraudulent in nature is mere conjecture and does not present a genuine dispute for trial. Accordingly, I agree with the Bankruptcy Court's

conclusion that the Kloss Parties have not met their burden of establishing their claim with respect to the 2008 Loan.

*The 2010 Subordination.* In his certification in opposition to the Summary Judgment Motion, Kloss identified specific documents by bates number that he reviewed in connection with the 2010 Subordination. Specifically, Kloss stated that he reviewed MFC's Balance Sheet, Statement of Operations, Statement of Changes in Stockholders' Deficit, and Statement of Cash Flows for the years ending in 2005, 2006, 2007, and 2008; and MFC projections for the years 2009 through 2014. Hussain denied, in his certification in support of the Summary Judgment Motion, that he provided Kloss with any financial information to review prior to Kloss's execution of the 2010 Subordination.

To establish the falsity of the financial statements identified by Kloss in his certification, the Kloss Parties offer to two categories of circumstantial evidence. In the first category of evidence, the Kloss Parties refer to a forensic accounting report that was prepared by an outside firm, Withum Smith & Brown, at the request of MFC's shareholders (the "Withum Report"). The Withum Report concluded that all of the financial information that MFC had provided to banks and other creditors, for the year ended December 31, 2011, through October 21, 2018, contained material misrepresentations. The Withum Report did not address the reliability of MFC's financial statements at the time of the 2010 Subordination—which Kloss executed on January 12, 2010. The Kloss Parties nevertheless contend that the Withum Report supports an inference that fraud at MFC was "pervasive" and, therefore, predated the specific time period that was the focus of the report. In the second category of circumstantial evidence, the Kloss Parties cite to the fact that D'Souza, who pled guilty in 2014 to preparing fraudulent financial documents, began his employment at MFC in 2009, although he was not promoted to chief financial officer of MFC until

2012. The Kloss Parties contend, on appeal, that the Bankruptcy Court should have inferred from this fact that D'Souza's fraud was already underway during all or a substantial portion of his employment, including as early as the time of the 2010 Subordination.

The issue of whether Kloss actually reviewed the financial statements that he identified in his certification is a matter of dispute. However, even assuming that Kloss reviewed those documents, the Kloss Parties still have not provided sufficient evidence to establish that any information in those specific documents was false. While the Withum Report may support an inference that fraud with respect to MFC's financial statements predated the specific time period that was the focus of the report, the Withum Report does not establish the falsity of the *specific* documents that Kloss identified in his certification.[4] Similarly, even assuming that D'Souza was engaged in his fraud as far back as the 2010 Subordination, that fact does not establish that his fraud extended to the *specific* financial statements that Kloss identified. Accordingly, I agree with the Bankruptcy Court's conclusion that the Kloss Parties have not met their burden of establishing their claim with respect to the 2010 Subordination.

***The 2011 Subordination.*** At his deposition, Kloss testified that he reviewed an updated version of the Binder in connection with the 2011 Subordination, and that the Binder might have contained tax returns and financial statements. In his certification in opposition to Hussain's motion for summary judgment, Mr. Kloss further stated that he reviewed an updated version of the Binder when he was asked to subordinate to Bank Leumi. However, Mr. Kloss still did not identify a single specific document that he reviewed in connection with the 2011 Subordination.

---

[4] The Kloss Parties contend that the Withum Report described a "culture of acceptance fraud" at MFC, and assert that this fact permitted an inference that that earlier financial statements were false. (Kloss Br. at 24, ECF No. 7.) Even if the Court were to accept that contention (in support of which the Kloss Parties have not cited any law), the Court is still not able to conclude from their proposed inference that the *specific* documents identified by Kloss were false.

As noted above, the existence of the Binder is a matter of dispute. However, even assuming this fact in favor of the Kloss Parties' for the purposes of the Summary Judgment Motion, the Kloss Parties still have not satisfied their burden of presenting *any* evidence—much less by a *preponderance* of the evidence—to establish the falsity of the documents in the Binder. Accordingly, I agree with the Bankruptcy Court's conclusion that the Kloss Parties have not met their burden of establishing their claim with respect to the 2011 Subordination.

### 2. The 2013 Reaffirmation Can Not Support the Kloss Parties' Claim to a Discharge Exception under Section 523(a)(2)(B).

Although I agree with the Bankruptcy Court's conclusion that the Kloss Parties failed to meet their burden with respect to the 2008 Loan, 2010 Subordination, and 2011 Subordination, I also must separately address whether the Kloss Parties were able to establish their claim with respect to the 2013 Reaffirmation. In its Letter Decision, the Bankruptcy Court acknowledged that there was evidence in the record to show that the Kloss Parties relied on false or fraudulent documents when entering into the 2013 Reaffirmation. (*See* Letter Decision at 15.) Despite this finding, the Bankruptcy Court nevertheless concluded that the 2013 Reaffirmation was of "no effect" and, therefore, that any fraud related to that transaction could not support the Kloss Parties' claim. (*Id*.) In arriving at that conclusion, the Bankruptcy Court noted that, by the time of the 2013 Reaffirmation, the unsecured debt that was held by the Kloss Parties had already been subordinated to the secured interests of Bank Leumi by virtue of the 2011 Subordination. (*Id*.) According to the Bankruptcy Court's reasoning, any attempt by the Kloss Parties to "exercis[e] their rights against MFC and Hussain instead of signing the 2013 Reaffirmation" would have made "no difference," since the Kloss Parties had already "waived" any collection rights before the 2013 Reaffirmation. (*Id*.)

On appeal, the parties frame the issue as one of whether any fraud related to the 2013 Reaffirmation caused "damages" to the Kloss Parties. For example, Hussain argues, in his brief in this appeal, that "in connection with the Leumi Subordination, [the Kloss Parties] cannot show damages because the [2011] Subordination already made clear that it applied to all subsequent obligations of MFC to Bank Leumi." (Hussain Br. at 13, ECF No. 9.) In response, the Kloss Parties assert, in their reply brief, that "the majority view of the courts does not require proof [of] any such damage to render [a] debt nondischargeable." (Kloss Reply Br. at 17, ECF No. 12.) The Kloss Parties further contend that, even under the "minority view" advanced by Hussain and adopted by the Bankruptcy Court, they are entitled to a discharge exception under Section 523(a)(2)(B), because the Kloss Parties lost "valuable collection remedies" as a result of the 2013 Reaffirmation. (*Id*. at 18.)

I acknowledge that there does appear to be a split among the courts as to whether § 523(a)(2)(B) includes an additional requirement that the creditor must show damages. A majority of courts hold, as the Kloss Parties argue, that a separate damages requirement is not necessary for a claim under § 523(a)(2)(B). *See In re Anzo*, 547 B.R. 454, 471-72 (Bankr. N.D. Ga. 2016) (describing the split in authority and collecting cases). Conversely, some courts have concluded that a plaintiff must show that he suffered a loss that was proximately caused by a false financial statement. *See In re Siriani*, 967 F.2d 302, 306 (9th Cir.1992) (concluding that creditor "had to show that the fraud proximately caused its loss by adducing evidence that it relied on the financial statements, that it had valuable collection remedies at the time of renewal, and that such remedies lost value during the renewal period"); *In re Johnson*, 242 B.R. 283, 292-93 (Bankr. E.D. Pa. 1999) ("We can conceive of no reason why the common law requirement of proof of resulting

17

injury as the proximate cause as a necessary element of a successful fraud claim should not carry over to § 523(a)(2)(B) as well as § 523(a)(2)(A)").[5]

In this case, I need not decide whether the "majority" or "minority" view should prevail. Regardless of whether Section 523(a)(2)(B) requires a creditor to show "damages," I agree with the Bankruptcy Court's conclusion that the Kloss Parties are unable to rely on the 2013 Reaffirmation to support their claim. The plain words of Section 523(a)(2) require that a qualifying debt, or an extension, renewal, or refinancing of a qualifying credit, must be "obtained by" a false financial statement. In this case, by the time of the 2013 Reaffirmation, the Kloss Parties' had already agreed, by virtue of the 2011 Subordination, to forbear from receiving repayment of any kind on the 2008 Loan until MFC had satisfied all of its obligations to Bank Leumi. (*See* Subordination Agreement at § 1, R.389-393 (stating that the "[a]ll claims and demands . . . which [Kloss] now has or may hereafter have or acquire against [MFC] . . . shall not be paid . . . unless and until [MFC] has paid and satisfied in full all of its obligations to [Bank Leumi]"). The 2013 Reaffirmation merely confirmed the terms of the 2011 Subordination. (*See* 2013 Reaffirmation at 1, R.394-395 (stating that "[Kloss] hereby ratifies, reaffirms, and confirms the terms and provisions of the [2011] Subordination Agreement"). Moreover, the 2013 Reaffirmation explicitly states that it did not change the obligations of Kloss that had already been agreed to under the 2011 Subordination. (*See id*. ("[T]he transactions contemplated . . . will not, in any way whatsoever, increase, escalate, [or] expand . . . the obligations and liabilities of Junior Creditor under the [2011]

---

[5] The Bankruptcy Court did not cite to any law in the Letter Decision when it found that the 2013 Reaffirmation was of "no effect" since the Kloss Parties had already previously "waived" their collection rights. I presume, however, that the Bankruptcy Court was referring to those cases that have adopted the minority view and that require a creditor seeking a declaration of nondischargeability under § 523(a)(2)(B) based on an extension or renewal of credit to "show that it had valuable collection remedies at the time it agreed to renew its commitment to the debtor." *See In re Siriani*, 967 F.2d 302, 30506 (9th Cir. 1992) (citing cases).

Subordination . . . .")[6]  As a legal matter, because the 2013 Reaffirmation did not affect Kloss's legal obligations with respect to the 2008 Loan, there was never any extension, renewal, or refinancing of credit that was "obtained by" the 2013 Reaffirmation.  Accordingly, I agree with the Bankruptcy's conclusion that Hussain is entitled to summary judgment as a matter of law.[7]

## IV. CONCLUSION

In summary, I find that (1) the Bankruptcy Court did not abuse its discretion by denying the Discovery Extension Motion, and (2) the Bankruptcy Court properly granted the Summary Judgment Motion.  Accordingly, for the foregoing reasons, both Orders of the Bankruptcy Court are **AFFIRMED**.

---

[6]  I note that, in exchange for executing the 2013 Reaffirmation, the Kloss Parties requested, and MFC agreed, to increase the interest rate on the 2008 Loan.  The exchange in value in that transaction suggests that the Kloss Parties and MFC believed, at the time of 2013 Reaffirmation, that Kloss was giving up additional collection rights that he had not already given up by virtue of the 2011 Subordination.  However, regardless of what the parties believed, the 2013 Reaffirmation had no legal effect on the Kloss Parties' obligations.

[7]  In his briefing on appeal, Hussain raises the separate argument that the 2013 Reaffirmation was merely a "forbearance," which he contends does not meet the definitions of a "debt" or "extension, renewal, or refinancing of credit" under § 523(a)(2).  The Bankruptcy Court did not address this issue in the Letter Decision.  Because I affirm the Bankruptcy Court's order based on the dispositive issues that were addressed by that court, I need not consider the issue of whether a "forbearance" qualifies under the statute.

19